(156 App. Div. 217.)

## RUNGE v. KOCH et al.

(Supreme Court, Appellate Division, First Department. April 11, 1913.)

1. PARTY WALLS (§ 9*)—CONVEYANCE OF ADJOINING PREMISES—RESERVATION OF EASEMENT IN PARTY WALL.

The owner of two adjoining lots with the houses thereon bounded by the center line of the party wall between the houses who conveyed the southerly one of the lots by a deed describing its northerly boundary as running from the front through the party wall, thereby retained an easement in the wall, and in the chimney constructed at its rear end of the same width and as a part of the houses, although such chimney was out of line with the wall and encroached slightly upon the lot conveyed.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. §§ 42–53; Dec. Dig. § 9.*]

2. PARTY WALLS (§ 2*)—STRUCTURES CONSTITUTING PARTY WALL.

The wall of an oven not constructed for the joint use of the adjoining owners, but solely for use in connection with the lot on which it was built, and which was neither suitable nor available for any practical use in connection with the other lot, and about 20 inches thick and 13 feet long, extending back from a chimney at the rear end of a party wall between the two adjoining houses and ending in layers of brick against the chimney, but not bonded into the chimney and which had no foundation, was no part of the party wall.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. § 2; Dec. Dig. § 2.*]

3. EASEMENTS. (§ 16*)—ENCROACHING ON LAND CONVEYED—RIGHTS OF GRANTOR—IMPLIED RESERVATION.

Where the owner of adjoining lots conveys one of them, with the house thereon, without expressly reserving an easement for the support of a wall on the land retained which encroaches on the premises conveyed, there is no implied reservation of an easement in favor of the premises retained, unless the encroachment is apparent, continuous, and absolutely necessary for the enjoyment of the premises retained; and hence there was no implied reservation of an easement of support for an oven wall five feet high constructed on the lot retained and extending back from the party wall through which the boundary ran, and encroaching upon the land conveyed, but which might be readily moved or torn down, and a new wall constructed on the retained premises without materially affecting the use of the oven.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 43; Dec. Dig. § 16.*]

Appeal from Trial Term, New York County.

Ejectment by Minnie G. Runge against Marie A. Koch and another. From a judgment entered upon a verdict in favor of the defendant, and from an order denying her motion for a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Robert W. B. Elliott, of New York City (William Byrd, of New York City, on the brief), for appellant.

J. J. Kramer, of New York City (J. P. Bourke, of New York City, on the brief), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. This is an action in ejectment. The plaintiff owns the premises known as number 1492 Lexington avenue, in the borough of Manhattan, N. Y., which have a frontage of 25 feet on the westerly side of the avenue and a depth of 80 feet; and the defendant owns the premises adjoining on the north, known as No. 1494 Lexington avenue, of like dimensions. At some time prior to the year 1888, both of these lots were owned by one Schnugg, and evidently his grantee, whose name is not disclosed by the record, in that year built a five-story brick house on each lot with a party wall between them. The buildings thus erected occupied the premises from the line of Lexington avenue to a depth of about 65 feet. The party wall between the houses is 16 inches thick, and its center line is the true boundary line between the lots. A chimney was erected with the party wall and houses at the westerly end of the party wall and of the same width and extending out therefrom westerly 8¾ inches and running above the top of the buildings. Every third layer of brick in the chimney was bonded into the party wall and probably in part into the rear wall of plaintiff's house, if the surveys are accurate; for, although the chimney is of the same thickness north and south as the party wall, it extends 9¾ or 10 inches over the plaintiff's premises, or 1¾ or 2 inches more than ½ its thickness. It was not otherwise shown whether this chimney was designed for, or was used in connection with, both houses, or how it was connected or used or capable of being used.

It appears that after the houses had been erected, but during the same year, an oven was built in the rear of the premises now owned by the defendant. This oven apparently was built upon the surface of the back yard, and consisted of three stone walls cemented or plastered on the outside and a roof. The evidence tends to show that the walls of the oven originally extended about five feet above the ground, but the plaintiff's premises have since been filled in; and, according to a survey made shortly before the trial, the southerly wall of the oven was then only about 3½ feet above her lot. The westerly line of the westerly wall of the oven was about 13 feet and ½ an inch west of the westerly wall of defendant's house. The dimensions of the oven north and south are not given. The southerly wall of the oven extended from the westerly wall thereof to the chimney, where, as now appears, it ends in layers of brick against, but not bonded to, the chimney, with the crack or line between the chimney and the bricks of the wall filled with cement or mortar. This southerly wall is 20 inches in thickness, and about 12 feet, 3¾ inches long. According to the testimony of surveyors, this southerly wall now encroaches upon the plaintiff's premises at the chimney from 8 to 11¾ inches, and at the westerly end at the surface of the ground from 8 to 15¾ inches, and at the top of the wall of the westerly end from 8 to 16½ inches. A vertical iron brace was extended along the southerly side of the southerly wall at about the middle of the wall, and secured at the bottom and top by bolts passing through the oven. Its purpose evidently was to prevent the wall from falling out toward the south. This brace had become broken, and extended a few inches over the plaintiff's premises beyond the southerly face of the wall. The evidence tends to show that this wall has been repaired from time to time, and that stone,

brick, and cement, or cement and plaster, have been used in repairing it. The plaintiff testified that about five years after the wall was constructed and again about twelve years before the trial the wall became cracked, and on each occasion the defects were remedied by additional construction extending the wall several inches over her premises. The plaintiff seeks by this action to recover possession of that part of her premises occupied by the oven wall and by the chimney.

[1, 2] These two houses and lots were sold on the foreclosure of a mortgage, together with the two adjoining on the south, and were duly conveyed by referee's deed to said Schnugg on the 17th day of April, 1889, and according to his testimony the oven had been fully constructed prior to that time. On the 26th day of the same month Schnugg conveyed the southerly house and lot to the plaintiff's brother; but the plaintiff and her mother, together with her brother, furnished the consideration, and on the 9th day of October, 1899, the brother deeded the premises to the plaintiff and her mother. The mother died in 1901, leaving the plaintiff and her brother her only heirs, and on April 2, 1903, the brother conveyed his interest in the premises to plaintiff. After thus conveying the southerly house and lot, and on July 29, 1889, Schnugg conveyed the northerly house and lot to the defendant. The description in the deed by which Schnugg conveyed the southerly house and lot to plaintiff's brother is by metes and bounds, and the northerly boundary is described as running from the westerly line of Lexington avenue "westerly and parallel with Ninety-Sixth street and part of the way through a party wall eighty (80) feet." The court left it to the jury to determine whether or not the oven wall was a party wall, and instructed them that the question depended upon whether or not it could be used in substantially the same manner by the owners of both lots, which is the ordinary test. It is to be borne in mind in deciding what was meant by the "party wall" through which the boundary ran that this oven wall was not erected with the houses; and that, while the boundary line ran along the center line of the wall between the buildings, it was several inches to the north of the center line of the oven wall. By this express reference in the deed to a party wall Schnugg retained an easement in the wall between the buildings, and doubtless in the chimney, which was the same width and higher than the wall, and, according to the evidence, was constructed with it and as part of these two houses, although it is somewhat out of line as has been stated. We are of opinion, however, that upon no view of the evidence can it be maintained that the wall of the oven which continued back from the chimney was a party wall. Assuming that the oven was constructed before Schnugg conveyed to plaintiff's brother and that it then encroached upon the southerly lot, it was manifestly constructed, not for the joint use of the owners of these lots, but solely and exclusively for use in connection with the northerly lot, for it had no foundation, and was neither suitable nor available for any practical use in connection with the southerly lot, and in no sense answers the description of a party wall. Harber v. Evans, 101 Mo. 661, 14 S. W. 750, 10 L. R. A. 41, 20 Am. St. Rep. 646; 30 Cyc. 774; 22 Am. & Eng. Enc. L. 238. The easement reserved by the grantor was in the party wall as it then existed;

and if the oven wall was erected, as some of the evidence tends to show, after this conveyance, then clearly the erection of the wall constituted a trespass and an unauthorized encroachment.

It was conceded by counsel for the defendant on the trial that the plaintiff owned the fee to the premises described in the complaint, but in behalf of his client he claimed an easement for the support of the chimney and wall of the oven as long as they stand. The plaintiff, by failing to request the court to direct a verdict for possession, conceded that there was a question of fact; and the court submitted it to the jury to determine whether or not the conveyance of the premises now owned by the plaintiff from the common owner was subject to a servitude in favor of the premises now owned by the defendant for the maintenance of the wall, and, if not, the damages sustained by plaintiff. The jury were instructed, in effect, that if it was open and obvious to any one examining the property at the time of the conveyance to the plaintiff's brother, or at the time of the conveyance by him to her, that this wall encroached upon the southerly lot, the jury would have a right to find that both her brother and she took title subject to a servitude in favor of the northerly lot. If, therefore, the jury found that the oven wall was not a party wall, they may have found against the plaintiff on the theory that her brother and she took subject to an easement because it was observable that the wall was over the boundary line. If the existence of an easement depended on whether the encroachment was obvious, doubtless it was a question of fact.

[3] That question appears to depend mainly upon the order of the conveyances by the common owner. The early decisions in this state are not in harmony on the effect of such a grant without an express reservation of an easement for the support of a wall on the land not conveyed which encroaches on the premises conveyed; but finally the courts have declared the law to be that in such case there is no implied reservation of an easement in the premises first conveyed in favor of the premises not granted, unless the encroachment or servitude "is apparent, continuous and absolutely necessary for the enjoyment" of the premises retained by the grantor. Wilmurt v. McGrane, 16 App. Div. 412, 418, 45 N. Y. Supp. 32, and cases cited; Burr v. Mills, 21 Wend. 290; De Baun v. Moore, 32 App. Div. 397, 52 N. Y. Supp. 1092; affirmed on opinion below 167 N. Y. 598, 60 N. E. 1110; Sloat v. McDougal (City Ct. Brook.) 9 N. Y. Supp. 631; Bauman v. Wagner, 146 App. Div. 191, 130 N. Y. Supp. 1016; Fritz v. Tompkins, 168 N. Y. 524, 61 N. E. 893; Washburn on Easements and Servitudes (3d Ed.) 233, 236. The courts have not undertaken to define definitely what is meant in this connection by the phrase "absolute necessity," but it is quite clear that something more is intended than mere convenience or a necessity which could be remedied without great expenditure of money, for in Wilmurt v. McGrane, supra, and De Baun v. Moore, supra, the rule was so declared, and the court decided that windows which added materially to the usefulness of an apartment building were not absolutely necessary. It is manifest that the maintenance of this five-foot wall of this oven, constructed on the surface of the ground, in its present position is not absolutely necessary for the enjoyment of the defendant's premises. The evidence does not show that

the wall could not be readily moved off the plaintiff's premises, or that it could not be torn down and a new wall constructed on the defendant's premises, without materially affecting the capacity or usefulness of the oven. Unless the test in determining the necessity is whether the easement is necessary in order to enable the grantor to enjoy the wall or other encroachment in its condition at the time of the conveyance of that part of the land on which it encroaches, it is manifest that the rule does not apply to such a wall as that described in the record now before the court; but in so deciding we express no opinion as to whether the rule would be the same if the wall afforded support to a house or other substantial building and was necessary for that purpose. See Katz v. Kaiser, 10 App. Div. 137, 41 N. Y. Supp. 776; affirmed 154 N. Y. 294, 48 N. E. 532. If, for instance, a clothes pole stood upon the line between the premises, it could hardly be maintained that it was absolutely necessary for the enjoyment of the premises retained by the grantor that the pole should be maintained in that position. Assuming, therefore, that the jury were justified in finding that it was obvious to any one viewing the premises that the wall encroached upon the plaintiff's premises, still we are of opinion that there was no implied reservation to the grantor and his grantees to retain it in its then position.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

SCOTT, J. I concur in the reversal of the judgment because under the pleadings the judgment might hereafter be deemed to amount to an adjudication that the plaintiff is not the owner of the strip of land on which the encroachment rests, and this notwithstanding the disclaimer by the defendants on the trial of any claim of title to this strip.

The evidence clearly indicates, and so as I understand the jury must have found, that the oven had been erected substantially as it stands now, when the common owner, Schnugg, conveyed the southerly house and lot to the plaintiff's predecessor in interest. At that time the southerly wall of the oven overlapped and encroached upon the southerly lot. This encroachment was continuous and apparent and reasonably necessary for the enjoyment of the oven as it then stood. I think upon well-established principles that there was an implied reservation in favor of the northerly lot for the support by the southerly lot of so much of the oven wall as then encroached upon it. Lampman v. Milks, 21 N. Y. 505; Simmons v. Cloonan, 47 N. Y. 9; Wilson v. Wightman, 36 App. Div. 44, 55 N. Y. Supp. 806. The proper judgment to be entered upon the facts as they appeared upon the trial would be that suggested in the very similar case of Wilson v. Wightman, supra, to wit, that the plaintiff is the owner of the fee subject to an easement appurtenant to the adjoining lot for the maintenance of the existing oven wall. Of course, if that wall be removed, the easement would terminate, and no new wall encroaching upon plaintiff's property could legally be built. Buss v. Dyer, 125 Mass. 287.